UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LORRAINE BOND,<br><br>*Plaintiff*,<br><br>v.<br><br>OFFICE OF THE ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,<br><br>*Defendants*. | Civil Action No. 23-823 (RDM) |

**MEMORANDUM OPINION AND ORDER**

On November 12, 2020, the Council of the City of Philadelphia passed a resolution whereby it formally apologized, almost twenty-five years later, "for the decisions and events preceding and leading to the devastation that occurred on May 13, 1985." Resolution No. 200609, Council of the City of Philadelphia (adopted Nov. 12, 2020), https://phila.legistar.com/LegislationDetail.aspx?ID=4681920&GUID=B829ECBE-2918-4C0E-87B6-271DB263B6C7&Options=ID|Text|&Search=200609. That day, "the City of Philadelphia police dropped a bomb on 6221 Osage Avenue, a building occupied by several members of a group called 'MOVE,' killing eleven of the thirteen people inside, [and] devastating the West Philadelphia community." *In re City of Phila. Litig.*, 158 F.3d 711, 714 (3d Cir. 1998). The blaze the bomb started ultimately destroyed 61 homes in the vicinity, *see In re City of Phila. Litig.*, 49 F.3d 945, 952 (3d Cir. 1995), including Plaintiff Lorraine Bond's, *see* Dkt. 5 at 4 (Second Am. Compl. ¶ 9).[1]

---

[1] On May 9, 2023, Plaintiff sought leave to file a second amended complaint, Dkt. 5. The Court has not yet ruled on the motion; to date, the Court has ruled only that the motion itself may be

On March 20, 2023, Plaintiff filed this suit *pro se*, seeking to recover $1.5 trillion (or more) in compensatory damages and $3 trillion (or more) in punitive damages for the harm she and her family allegedly suffered as a result of the "MOVE bombing." *See generally* Dkt. 5. Plaintiff named as defendants several agencies of the City of Philadelphia (the Philadelphia Police Department, the Philadelphia Fire Department, the "Philadelphia Manager Director Office," and the "Philadelphia Mayor Office"), the Pennsylvania State Police Department (the "PSP"), the Office of the Attorney General of the United States, the Federal Bureau of Investigation (the "FBI"), and EIDP, Inc. *Id.* at 1.[2] All of these parties, except EIDP, have moved to dismiss the amended complaint. *See* Dkt. 8; Dkt. 15; Dkt. 18. In addition, Plaintiff has moved for default judgment against EIDP, Dkt. 24, and EIDP has moved to set aside the default entered against it and for leave to file its own motion to dismiss, Dkt. 23. Finally, Plaintiff has moved for declaratory judgment, Dkt. 28, and for default judgment, Dkt. 29, against all Defendants. The Court will consider each of the pending motions in turn.

**A.      Pennsylvania State Police Department's Motion to Dismiss (Dkt. 15)**

The PSP moves to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(1) on the ground that it is immune from suit under the Eleventh Amendment. Dkt. 15 at 6–8. Under the Eleventh Amendment, "an unconsenting State is immune from suits

---

filed on the docket. Defendants, however, have treated Plaintiff's second amended complaint as the operative complaint. *See* Dkt. 8 at 4; Dkt. 15 at 2; Dkt. 18 at 1. Accordingly, for ease of disposition, the Court will **GRANT** Plaintiff's motion for leave to amend, Dkt. 5, and will treat the second amended complaint included therein as the operative one for present purposes, notwithstanding the likelihood that the amendments are futile. *See Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) ("The Court may deny leave to amend based on futility if the proposed claim would not survive a motion to dismiss.").

[2] The operative complaint refers to EIDP, Inc. as the "E I DuPont Corporation." *See id.*; Dkt. 23 at 1.

brought in federal courts by her own citizens as well as by citizens of another State." *Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218, 222–23 (D.C. Cir. 1986) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)).  "Moreover, though the immunity is that of the state, 'some agencies exercising state power have been permitted to invoke the Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'"  *Id.* at 223 (quoting *Lake Country Ests. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 400–01 (1979)).  The PSP is such a state agency.  *See Atkin v. Johnson*, 2010 WL 11537499, at *3 (E.D. Pa. Aug. 17, 2010), *aff'd*, 432 F. App'x 47 (3d Cir. 2011).  As a result, it is not subject to suit (directly or indirectly) in federal court, unless (1) Congress has abrogated the sovereign immunity of the States in relevant respects; (2) the Commonwealth of Pennsylvania has waived the PSP's immunity; or (3) the plaintiff has stated a claim for prospective injunctive relief against a PSP officer or official based on an ongoing violation of federal law.  *See MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669–70 (1999); *Ex Parte Young*, 209 U.S. 123, 128 (1908).

Here, Plaintiff has failed to assert a claim for injunctive relief against any individual PSP officer or official.  *See* Dkt. 5 at 1.  Nor has the Commonwealth of Pennsylvania waived its sovereign immunity in relevant respects.  *See* 42 Pa. Stat. and Cons. Stat. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").  Finally, Plaintiff has failed to identify any federal statute that abrogates the sovereign immunity of the States with respect to the claims Plaintiff asserts.  Although Plaintiff refers to 42 U.S.C. § 1983 in her complaint, *see* Dkt. 5 at 2 (Second Am. Compl. ¶ 1), "neither a

3

State nor its officials acting in their official capacities are 'persons' under § 1983," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Accordingly, the PSP's motion to dismiss, Dkt. 15, is **GRANTED**, and Plaintiff's claims against the PSP are **DISMISSED** for lack of jurisdiction.

**B.     City of Philadelphia's Motion to Dismiss (Dkt. 8)**

The City of Philadelphia (the "City")[3] argues that Plaintiff's claims against it should be dismissed due to a different jurisdictional defect: lack of personal jurisdiction.  Dkt. 8 at 5. There are two types of personal jurisdiction, general and specific.  A plaintiff seeking to invoke the Court's jurisdiction bears the burden of alleging facts sufficient to support either general or specific personal jurisdiction.  *See Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021).

A "court may exercise general jurisdiction [over a defendant] only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).  When such jurisdiction exists, the court has the power to hear "any and all claims" brought against a defendant.  *Id.*  Because Plaintiff fails to allege any facts that might plausibly establish that the City of Philadelphia is "at home" in the District of Columbia, the Court lacks general personal jurisdiction over the City.  *Cf. Westley v. Mann*, 896 F. Supp. 2d 775, 798 (D. Minn. 2012) (finding that the City of Miami Beach could not fairly be regarded as "at home" in Minnesota such that general personal jurisdiction existed there).

---

[3] The Court refers to the various agencies within the municipal government that Plaintiff has sued collectively as the City because the subagencies of the city government have no legal existence separate from that of the City of Philadelphia itself.  *See Gremo v. Karlin*, 363 F. Supp. 2d 771, 780 (E.D. Pa. 2005); 53 Pa. Stat. and Cons. Stat. § 16257 ("[N]o such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transactions . . . shall be in the name of the city of Philadelphia.").  As a result, those separate agencies cannot themselves be sued.

Nor has Plaintiff alleged any facts that might plausibly establish specific personal jurisdiction over the City for the claims she asserts. Specific jurisdiction exists when the defendant took "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State" and where the plaintiff's claims "'arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co.*, 141 S. Ct. at 1024–25 (first alteration in original) (first quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); then quoting *Bristol-Myers Squibb Co. v Superior Ct. of Calif.*, 582 U.S. 255, 272 (2017) (Sotomayor, J., dissenting)). Here, Plaintiff's claims arise out of the 1985 MOVE bombing in Philadelphia. She does not allege, however, that the City of Philadelphia engaged in any conduct in, or otherwise had relevant contacts with, the District of Columbia.

The Court, accordingly, **GRANTS** the City's motion to dismiss, Dkt. 8, and **DISMISSES** Plaintiff's claims against the City of Philadelphia.

C.      **Office of the Attorney General and the FBI's Motion to Dismiss (Dkt. 18)**

Plaintiff asserts a products liability claim against the Office of the Attorney General of the United States and the FBI, predicated on their alleged provision of the explosives used in the MOVE bombing to the Pennsylvania authorities. Dkt. 5 at 3 (Second Am. Compl. ¶ 7).[4] The federal defendants ask this Court to dismiss the products liability claim on the ground that it is time barred. Dkt. 18 at 2.

Because a statute of limitations provides an affirmative defense, courts ordinarily "hesitate to dismiss a complaint on statute of limitations grounds." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). That said, a plaintiff can plead herself out of court. And if

---

[4] Plaintiff does not appear to bring a § 1983 claim against the Office of the Attorney General or the FBI, and for good reason, since "Section 1983 does not apply to federal officials acting under color of federal law." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005).

5

"the complaint on its face is conclusively time-barred," dismissal is appropriate. *Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014) (quoting *de Csepel v. Republic of Hungary*, 714 F.3d 591, 603 (D.C. Cir. 2013)). That is the case here.

      Plaintiff does not specify whether she is bringing her products liability claim under D.C. law or Pennsylvania law, but nothing turns on that question of choice of law, since under either D.C. or Pennsylvania law, her products liability claim is time barred. *See Flanagan v. Martfive, LLC*, 2017 WL 661607, at *3 (W.D. Pa. Feb. 17, 2017) ("Products liability cases in Pennsylvania are controlled by the personal injury statute of limitations. Thus, the applicable Pennsylvania statute of limitations for a product liability case is two years." (internal citations omitted)); *Roberge v. Eli Lilly & Co.*, 2005 WL 607877, at *5 (D.D.C. Mar. 11, 2005) ("Products liability claims in the District of Columbia must be brought within a three-year period of limitation 'from the time the right to maintain the action accrues.'" (quoting D.C. Code § 12-301(8))). As Plaintiff's complaint and the various attachments establish, the actions that form the basis for claims against the federal defendants occurred in 1985—decades before Plaintiff brought this suit. Plaintiff offers no explanation or justification for that long delay in bringing suit. She does not argue, for example, that her claims are nonetheless timely due to a tolling of the statute of limitations under the "'discovery rule,' a doctrine that delays accrual of a cause of action until the plaintiff has 'discovered it.'" *Merck & Co. v. Reynolds*, 559 U.S. 633, 644 (2010). Given the highly publicized nature of the MOVE bombing and the resulting investigations and litigation, she understandably does not so much as gesture at the possibility that—even assuming that the discovery rule applied to products liability claims brought under Pennsylvania or D.C. law—it might somehow excuse her 38-year delay in bringing this action. To the contrary, she alleges that she "was originally on [a] class action suit, suing the makers of the product." Dkt. 5 at 3

(Second Am. Compl. ¶ 6).[5] That suit, which is one of the few things that Plaintiff mentions in support of her products liability claim, was brought in 1985. *Id.* at 35.

Accordingly, the Court concludes that Plaintiff's products liability claim against the federal defendants is time barred, **GRANTS** the federal defendants' motion to dismiss, Dkt. 18, and **DISMISSES** Plaintiff's claims against the Office of the Attorney General of the United States and the FBI.

### D.     EIDP's Motion to Set Aside Entry of Default (Dkt. 23)

On July 27, 2023, the clerk entered a default against E&I DuPont Corporation. Dkt. 22. As EIDP explains, that is a non-existent company. Dkt. 23 at 5. Presumably, Plaintiff intended to bring suit against E. I. du Pont de Nemours and Company, which manufactured Tovex in the 1980s. *Id.* But, in any event, that entity has been known as EIDP, Inc. since January 1, 2023. *Id.*

Out of an abundance of caution, EIDP now moves to set aside that default (which was entered against the non-existent company) and seeks leave to file a motion to dismiss, which it attaches to its motion. Dkt. 23. A "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In determining whether good cause exists, a court must consider "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980).

Starting with the first consideration, EIDP asserts that its default was not willful because it was not properly served and therefore "did not believe that an answer to the pleading . . . was

---

[5] To the extent Plaintiff's claim might be read as seeking to enforce any judgment entered in her favor as part of that class action, Plaintiff has not made any specific allegations in support of that claim. Nor has she explained why it would be appropriate for such a case to be filed in this Court rather than the court that originally issued the judgment she seeks to enforce.

warranted." Dkt. 23 at 8. And, now that it is aware of the lawsuit, EIDP continues, it has shown "that it is ready and willing to defend the lawsuit and [is] not ignoring court process." *Id.* The Court agrees that Plaintiff has not willfully defaulted; to the contrary, because it was never properly served, it was under no obligation to respond to the complaint.

Although *pro se* litigants are held to less stringent standards than lawyers in preparing formal pleadings, *see Redwood v. Council of D.C.*, 679 F.2d 931, 933 (D.C. Cir. 1982) (per curiam), this leeway "does not constitute a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure," *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). Rule 4(h) provides in relevant part:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation . . . that is subject to suit under a common name, must be served:
>
> > (1) in a judicial district of the United States:
> >
> > > (A)  in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> > >
> > > (B)  by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant . . . .

Rule 4(e)(1), in turn, authorizes service in the manner prescribed in the state where the action is pending or where service is made. The District of Columbia permits service by certified mail "to the person to be served." D.C. Sup. Ct. R. 4(c)(4). Under Delaware law, a corporation may be served with legal process "by delivering a copy personally to any officer or director of the corporation . . . or the registered agency of the corporation . . . or by leaving it as the dwelling house or usual place of abode . . . of any officer, director or registered agent . . . or at the registered office or other place of business of the corporation . . . ." 8 Del. Code § 321(a).

Here, Plaintiff mailed the summons and complaint by certified mail, using the following company names: "Dupont Corporation," "ECI Dupont Corporation," and "Dupont Corporate Office." Dkt. 23-2 at 2; Dkt. 23-3 at 2. She did not serve an officer, managing or general agent, director, or other agent authorized to accept service of process. She never sent the summons and complaint to EIDP or to E.I. du Pont de Nemours and Company. Dkt. 23 at 5–6. EIDP represents, moreover, that it did not receive the summons and complaint from Plaintiff but that, instead, its parent corporation actually received Plaintiff's mailings and simply forwarded them to EIDP as a courtesy. *Id.* at 5. Finally, Plaintiff's proof of service is not accompanied "by the server's affidavit," as required by Rule 4(l), indicating that the process server was over 18 years old and is not a party to the action, as required by Rule 4(c). *See* Dkt. 12. Because Plaintiff has failed to offer the required proof that service was affected in the manner prescribed by Rule 4(h), the Court must set aside the entry of default.

Turning to the second consideration, EIDP notes that setting aside the default would not cause Plaintiff any cognizable prejudice. Dkt. 23 at 8. The Court agrees. Plaintiff argues in response that setting aside the default will require her to litigate her case on the merits, and that will take time. But "[d]elay in and of itself does not constitute prejudice." *Cap. Yacht Club v. Vessel AVIVA*, 228 F.R.D. 389, 393–94 (D.D.C. 2005)). "Rather, the question is whether that delay presents any accompanying dangers such as loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion." *Koch Mins. Sarl v. Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 41 (D.D.C. 2020) (internal quotation marks omitted). Here, it borders on the risible to suggest that, after having waited 38 years to bring suit, Plaintiff would suffer undue prejudice based on EIDP's short delay in responding to a complaint that was served on the incorrect corporate entity.

9

Finally, with respect to the third consideration, EIDP stresses that it has multiple meritorious defenses, including a compelling statute of limitations defense. Like the Office of the Attorney General and the FBI, EIDP notes that this claim is inescapably time barred. For the reasons set forth above, the Court agrees. The relevant statute of limitations is either two years or three years, *see* 42 Pa. Stat. and Cons. Stat. § 5524(2) (two-year statute of limitations for personal injury claims, which include products liability claims); D.C. Code § 12-301(8) (three-year statute of limitations for products liability claims), and, as noted above, 38 years have passed since the relevant events occurred. And, as with her claims against the federal defendants, Plaintiff does not even suggest that some tolling rule might excuse that extraordinary delay. Under these circumstances, the strong judicial policy in favor of resolving cases on the merits controls.

The Court, accordingly, concludes that good cause exists to **SET ASIDE** the default entered against EIDP and therefore **GRANTS** EIDP's motion, Dkt. 23. The Court further **DENIES** Plaintiff's motion to enter default judgment against EIDP, Dkt. 24, as "[p]rior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)," 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (4th ed. 2023). Finally, the Court **GRANTS** EIDP leave to file its motion to dismiss Plaintiff's claims against it, Dkt. 23, and hereby deems that motion filed as of today.

Because EIDP's motion to dismiss is now operative, Plaintiff, who is proceeding *pro se*, is advised of the following. Before the Court rules on EIDP's motion, Plaintiff is entitled to file a memorandum and supporting material in response. Under this Court's local rules, a party opposing a motion must serve and file a memorandum of points and authorities in opposition

within 14 days of the date of service of the motion or "at such other time as the Court may direct." Local Civil Rule 7(b). If Plaintiff fails to respond to EIDP's motion in the time provided, the Court may (1) treat the motion as conceded; *id.*; (2) rule on EIDP's motion based on EIDP's arguments alone and without considering Plaintiff's arguments; or (3) dismiss Plaintiff's claims for failure to prosecute, *see Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962)). To ensure that Plaintiff has adequate time to respond to EIDP's motion, the Court will extend Plaintiff's time to respond until December 19, 2023.

E. **Plaintiff's Motions for Declaratory Judgment and Default Judgment (Dkt. 28; Dkt. 29)**

All that remains for the Court to resolve are Plaintiff's motions for Declaratory Judgment and for Default Judgment, Dkt. 28; Dkt. 29. Because the Court has dismissed Plaintiff's claims against the City of Philadelphia, the PSP, the Office of the Attorney General and the FBI, the Court **DENIES** as moot both motions as to those defendants. To the extent these motions are directed at EIDP, the sole remaining defendant, the Court has already concluded that Plaintiff is not entitled to a default judgment against EIDP. Because Plaintiff's amended complaint does not appear to allege a claim for declaratory relief against EIDP, and because Plaintiff, in any event, has failed to establish that she is entitled to declaratory (or any other) relief against EIDP, the Court also **DENIES** both motions as to EIDP.

SO ORDERED.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  November 27, 2023